

# COURT OF APPEALS

**SECOND DISTRICT OF TEXAS**
**FORT WORTH**

## NO. 02-09-00463-CV

DUGAS LIMITED PARTNERSHIP,       APPELLANTS
DUGAS 1998 IRREVOCABLE
TRUST, WILLIAM BRUCE DUGAS
GRANDCHILD TRUST, JAMES
STEPHEN TURNER AND HURLEY
CALISTER TURNER, JR.,
CO-TRUSTEES OF THE DUGAS
1998 IRREVOCABLE TRUST F/B/O
WILLIAM BRUCE DUGAS

V.

DONNA NEAL GOODE DUGAS       APPELLEES
AND LAURA NICOLE DUGAS

------------

## FROM THE PROBATE COURT OF DENTON COUNTY

------------

## OPINION

------------

## I. INTRODUCTION

In this accelerated, interlocutory appeal, Appellants Dugas Limited Partnership (Dugas, LP); Dugas 1998 Irrevocable Trust (Dugas 1998 Trust); William Bruce Dugas Grandchild Trust (Grandchild Trust); and James Stephen Turner (Steve) and Hurley Calister Turner, Jr. (Cal), Co-Trustees of the Dugas 1998 Irrevocable Trust f/b/o William Bruce Dugas (Bruce) challenge the trial court's order denying their special appearances. In three issues, Appellants argue that general jurisdiction does not exist over Dugas, LP; that specific jurisdiction does not exist over the Dugas 1998 Trust, the Grandchild Trust, and Cal and Steve as co-trustees of the Dugas 1998 Trust; and that the trial court erred by denying their plea to the jurisdiction and plea in abatement. We will affirm in part and reverse and render in part.

## II. FACTUAL[1] AND PROCEDURAL BACKGROUND

Bruce died in January 2008. Appellee Donna Neal Goode Dugas married Bruce in 1984 and is his surviving spouse. Bruce and Donna had two children, Appellee Laura Nicole Dugas and William Bruce Dugas, II (William). Bruce's mother was Laura Jo Turner Dugas. Laura Jo's siblings are Cal and Steve. H. Calister Turner, Sr.—Laura Jo, Cal, and Steve's father—founded Dollar General.

---

[1]The members of the Turner and Dugas families and the entities that are the subject of this appeal are set out in the Appendix attached to this opinion.

Bruce and Donna moved to Aubrey, Texas, in 1995 and resided at 4801 South Highway 377 until 1999. According to Donna, she and Bruce "acquired a joint undivided fee simple interest in the Double D Ranch, located at 5932 Wildcat Road, Aubrey, Denton County Texas 76227 and 6032 Wildcat Road, Aubrey, Denton County Texas" in 1999. In July or September 2005, Bruce and Donna ceased living together at the Double D Ranch.[2] Bruce resided in Kentucky at the time of his death. Donna and Laura continue to reside at the Double D Ranch, and William resides in Corinth, Texas.

In December 1989, H. Calister Turner, Sr. and Steve entered into a trust agreement for the creation of the Grandchild Trust. H. Calister Turner, Sr. signed the trust agreement as grantor, and Steve signed as trustee. The Grandchild Trust was created "for the benefit of the Grantor's grandchild, [Bruce]," called for Steve to make income distributions to Bruce "as [Steve] deems advisable," and among other things, to make discretionary corpus distributions for Bruce's comfort, health, maintenance, and support. The Grandchild Trust gave Bruce a general testamentary power to appoint the assets remaining therein upon his death to any individual or entity. If Bruce did not so appoint any person or entity before his death, the assets were to be allocated pro rata among Bruce's children after taxes. From 1998 to 2007, and at other times during Bruce's lifetime,

---

[2]Donna filed an original petition for divorce in November 2005 in Denton County. The petition was still pending at the time of Bruce's death, according to Donna.

3

distributions were made to him from the Grandchild Trust by wire transfer and by check. The Grandchild Trust was executed in Kentucky.

In November 1998, Laura Jo, as settlor, created the Dugas 1998 Trust. The Dugas 1998 Trust identified Cal and Steve as trustees and provided that they are responsible for dividing and allocating the principal among three separate trusts named for Laura Jo's three children, including Bruce. It stated that Laura Jo's primary concern during the life of the named beneficiary was for the beneficiary's health, support, and education, and it gave Bruce the power to appoint by will his interest therein and provided that the principal was to be allocated among his then-living descendants upon his death if he did not exercise the appointment. The Dugas 1998 Trust made distributions to Bruce during his lifetime, including distributions from 2003 to 2007. Laura Jo, Cal, and Steve executed the trust in Florida.[3]

In February 1998, the LJWD Limited Partnership was formed by the Limited Partnership Agreement of the LJWD Limited Partnership. In April 1998, the LJWD Limited Partnership's name was changed to "Dugas Limited Partnership." Dugas, LP is "governed by the Uniform Limited Partnership Act of the State of Delaware." The purposes of Dugas, LP are "to buy, sell, invest in, operate[,] and manage such securities, real estate, and other assets as the

---

[3]Both the Grandchild Trust and the Dugas 1998 Trust provide that property identified in attached schedules belongs to the trusts, but no schedule is attached to the Grandchild Trust, and no property is identified on the schedule attached to the Dugas 1998 Trust.

General Partner may determine"; to consolidate investments; and to pool and protect assets. The partnership agreement lists Dugas, LP's principal place of business and principal office as "4801 South Highway 377, Aubrey, Texas 76227." Dugas, LP's general partner is Dugas Asset Management Corp. Bruce signed the partnership agreement as "President" of Dugas Asset Management Corp., and an exhibit to the partnership agreement identified Dugas Asset Management Corp.'s address as:

> Dugas Asset Management
> Corp.
> c/o William B. Dugas
> Double D Ranch, 4801 South
> Highway 377
> Aubrey, Texas 76227

As of December 31, 2008, Dugas, LP had fifteen limited partners. The partnership agreement listed only one asset of Dugas, LP: Dugas Family Partners, a Texas General Partnership.

The Family Office, L.L.C. is a Tennessee limited liability company that the Turner and Dugas families established to provide services to Turner and Dugas family members, their trusts, and the entities that they control. David Wilds is the chief executive officer of The Family Office, and Amy Freeny is the tax manager. The distributions that the Grandchild Trust and the Dugas 1998 Trust made to Bruce during his lifetime were transferred by the Family Office. The Family Office has no offices outside of Nashville, Tennessee.

5

A petition to probate Bruce's will was filed in Kentucky in February 2008. In February 2009, Donna sued Dugas, LP; the Grandchild Trust; the Dugas 1998 Trust; Ernest Pardue, in his capacity as the executor of Bruce's estate; Laura; William; and the Wayne F. Dugas, Sr. 1998 Trust in Texas.[4] Donna sought (1) an accounting of the assets of Bruce's estate and of the assets and distributions of the trusts; (2) a partition of the Double D Ranch; and (3) declarations regarding the character of the trusts for which Bruce was a beneficiary, whether certain distributions made to Bruce were advancements or loans, and whether Donna is entitled to recover as community property any income from appreciation of the trusts' assets.[5]

In March 2009, Pardue filed a "Verified Petition for the Settlement of the Estate of William Bruce Dugas, Deceased, and Complaint for Declaratory Judgment" in Kentucky. According to Donna, the petition sought relief similar to the relief that she seeks in her suit against Bruce's estate and the trusts.

In July 2009, Laura filed cross-claims against Cal and Steve as co-trustees of the Dugas 1998 Trust in Texas. She sought an accounting of the Dugas 1998 Trust and alleged that Cal and Steve breached fiduciary duties that they owed to

---

[4]Donna subsequently nonsuited the Wayne F. Dugas, Sr. 1998 Trust.

[5]According to Donna, she and Pardue (on behalf of Bruce's estate) have engaged in settlement discussions in Texas but have not finalized a settlement agreement.

6

her as trustees of the Dugas 1998 Trust by failing to investigate her needs and by failing to make sufficient distributions to her.

Dugas, LP; the Dugas 1998 Trust; the Grandchild Trust; and Cal and Steve as co-trustees of the Dugas 1998 Trust filed special appearances challenging the trial court's personal jurisdiction over them.[6] The trial court ultimately signed an order denying Dugas, LP's special appearance on the basis that general jurisdiction exists over it "based, in part, on the documentary proof showing that it had a principal place of business in Texas." The trial court denied the other defendants' special appearances because "specific jurisdiction exists over [each of them]. The facts of this case are directly on point with those set forth in *Steen Seijo v. Miller*, 425 F. Supp. 2d 194 (D.P.R. 2006)." The trial court denied any plea in abatement for each of the claims asserted by Laura against Cal and Steve as co-trustees of the Dugas 1998 Trust but granted any plea in abatement for the claims asserted by Donna against Dugas, LP, the Dugas 1998 Trust, and the Grandchild Trust, staying those claims "in the interest of comity," "pending resolution in the Kentucky proceedings." Dugas, LP, the Dugas 1998 Trust, the Grandchild Trust, and Cal and Steve as the Dugas 1998 Trust's co-trustees appeal.

---

[6]With the exception of whether Dugas, LP's principal place of business is Texas, the material facts relied upon by each side in support of, or in opposition to, the special appearances are undisputed.

## III. STANDARD OF REVIEW, BURDEN OF PROOF, AND PERSONAL JURISDICTION

Whether a trial court has personal jurisdiction over a defendant is a question of law, which we review de novo. *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 574 (Tex. 2007); *Luxury Travel Source v. Am. Airlines, Inc.*, 276 S.W.3d 154, 160 (Tex. App.—Fort Worth 2008, no pet.). In a suit against a nonresident defendant, the initial burden of proof is on the plaintiff to plead sufficient allegations to bring the defendant within the provisions of the Texas long-arm statute. *Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 658 (Tex. 2010). "This minimal pleading requirement is satisfied by an allegation that the nonresident defendants are doing business in Texas." *Huynh v. Nguyen*, 180 S.W.3d 608, 619 (Tex. App.—Houston [14th Dist.] 2005, no pet.). The plaintiff's original pleadings as well as its response to the defendant's special appearance can be considered in determining whether the plaintiff satisfied that burden. *Flanagan v. Royal Body Care, Inc.*, 232 S.W.3d 369, 374 (Tex. App.—Dallas 2007, pet. denied). Once the plaintiff has pleaded sufficient jurisdictional allegations, the defendant filing a special appearance bears the burden to negate all bases of personal jurisdiction alleged by the plaintiff. *Kelly*, 301 S.W.3d at 658. In other words, the defendant must disprove the existence of minimum contacts sufficient to establish personal jurisdiction over it—general, specific, or

8

both—as alleged by the plaintiff.[7] *Am. Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 806–07 (Tex. 2002), *cert. denied*, 537 U.S. 1191 (2003).

When a trial court enters an order denying a special appearance and issues findings of fact and conclusions of law, the appellant may challenge the fact findings on legal and factual sufficiency grounds. *BMC Software*, 83 S.W.3d at 794. Here, the trial court did not issue separate findings of fact and conclusions of law, but it detailed in its order denying Appellants' special appearances the factual and legal bases for its ruling. We may review the trial court's resolution of disputed fact issues for legal and factual sufficiency under the same standards of review that we apply in reviewing a jury's or trial court's findings of fact at trial.[8] *Id.*; *Luxury Travel Source*, 276 S.W.3d at 161; *see Kelly*, 301 S.W.3d at 659. We review a trial court's conclusions of law as a legal question; the appellant may not challenge a trial court's conclusions of law for factual insufficiency. *BMC Software*, 83 S.W.3d at 794.

A nonresident defendant is subject to the personal jurisdiction of Texas courts if (1) the Texas long-arm statute authorizes the exercise of jurisdiction and

---

[7]We may rely on precedent from federal courts in determining whether a nonresident defendant has met its burden to negate all bases of jurisdiction. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002).

[8]*See Cent. Ready Mix Concrete Co. v. Islas*, 228 S.W.3d 649, 651 (Tex. 2007); *City of Keller v. Wilson*, 168 S.W.3d 802, 807, 827 (Tex. 2005); *Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 334 (Tex. 1998), *cert. denied*, 526 U.S. 1040 (1999); *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986) (op. on reh'g); *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965); *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (1951).

(2) the exercise of jurisdiction does not violate federal and state constitutional due process guarantees. *Kelly*, 301 S.W.3d at 657 (citing *Scholobohm v. Schapiro*, 784 S.W.2d 355, 356 (Tex. 1990)). The broad language of the long-arm statute's "doing business" requirement permits the statute to reach as far as the federal constitutional requirements of due process will allow. *Guardian Royal Exchange Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 226 (Tex. 1991). The exercise of personal jurisdiction will not violate due process "when the nonresident defendant has established minimum contacts with the forum state, and the exercise of jurisdiction comports with 'traditional notions of fair play and substantial justice.'" *Moki Mac*, 221 S.W.3d at 575 (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 158 (1945)).

A nonresident defendant establishes minimum contacts when it purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws. *Kelly*, 301 S.W.3d at 657–58 (citing *Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 338 (Tex. 2009)). The factors important in determining whether a defendant has purposefully availed itself of the forum are (1) only the defendant's contacts with the forum are relevant, not the unilateral activity of another party or a third person; (2) the contacts relied upon must be purposeful rather than merely fortuitous; and (3) the defendant must seek some benefit, advantage, or profit by availing itself of the forum. *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 785 (Tex. 2005). Although not determinative, foreseeability is an

10

important consideration in deciding whether the nonresident defendant purposefully has established minimum contacts with Texas. *BMC Software*, 83 S.W.3d at 795.

A nonresident's contacts can give rise to either general or specific jurisdiction. *Retamco*, 278 S.W.3d at 338. General jurisdiction arises when a defendant's contacts with the forum are continuous and systematic so that the exercise of jurisdiction is proper even if the cause of action did not arise from or relate to the defendant's forum contacts. *Moki Mac*, 221 S.W.3d at 575; *Luxury Travel Source*, 276 S.W.3d at 162. In contrast, specific jurisdiction is established if the defendant's alleged liability arises from or is related to an activity performed in the forum. *Moki Mac*, 221 S.W.3d at 576. A Texas court may assert specific jurisdiction over an out-of-state defendant if the defendant's contact with the state is purposeful and the injury arises from or relates to those contacts. *Id.* at 572.

Once it has been determined that the nonresident defendant purposefully established minimum contacts with the forum state, the contacts are evaluated in light of other factors to determine whether the assertion of personal jurisdiction comports with fair play and substantial justice. *Guardian Royal*, 815 S.W.2d at 228 (citing *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 113–15, 107 S. Ct. 1026, 1033–34 (1987)). These factors include (1) "the burden on the defendant," (2) the interests of the forum state in adjudicating the dispute, (3) "the plaintiff's interest in obtaining convenient and effective relief," (4) "the interstate judicial system's interest in obtaining the most efficient resolution of

11

controversies," and (5) "the shared interest of the several States in furthering fundamental substantive social policies." *Id.* The burden is on the defendant to "present 'a compelling case that the presence of some consideration would render jurisdiction unreasonable.'" *Guardian Royal*, 815 S.W.2d at 231 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477, 105 S. Ct. 2174, 2185 (1985)). Only in rare circumstances will the exercise of jurisdiction not comport with fair play and substantial justice when the nonresident defendant has established minimum contacts. *Id.*

## IV. GENERAL JURISDICTION—DUGAS, LP

In the first issue, Dugas, LP challenges the trial court's finding that general jurisdiction exists over it "based, 'in part, on the documentary proof showing that it had a principal place of business in Texas.'" Dugas, LP argues that the evidence is legally and factually insufficient to support the finding that its principal place of business is in Texas because, contrary to the statement in the partnership agreement identifying Dugas, LP's principal place of business in Texas, Freeny stated in her affidavit that Dugas, LP has always had its principal place of business in Nashville, Tennessee, and has never had its principal office in Texas. Dugas, LP additionally argues that the exercise of jurisdiction over it does not comport with fair play and substantial justice. Donna responds that general jurisdiction exists over Dugas, LP because it is present in Texas.

## A.    Minimum Contacts

In *Cardinal States Gathering Co. v. Conoco, Inc.*, Conoco sued several entities to recover cost overruns for a pipeline that it had built in Virginia and West Virginia.  No. 14-00-00537-CV, 2001 WL 82322, at *1 (Tex. App.—Houston [14th Dist.] Feb. 1, 2001, no pet.) (not designated for publication).  The trial court denied Cardinal States's special appearance.  *Id.* at *2.  On appeal, Conoco argued that the trial court had jurisdiction over Cardinal States because its partnership agreement identified Houston as Cardinal States's place of business.  *Id.* at *4.  Cardinal States did not challenge that its principal place of business was Houston*,* but it argued that its only activities related to a single gas gathering system on the East Coast.  *Id.*  The court of appeals held that general jurisdiction existed over Cardinal States, reasoning as follows:

> Cardinal States cites no authority for the proposition that, even though the Partnership Agreement plainly states its principal place of business is Texas, it is not subject to jurisdiction in Texas.
>
> Under Texas law, venue is proper against a partnership wherever its principal office is located.  Although a particular court may have jurisdiction over a defendant even though the county in which that court is situated is not proper for venue purposes, the converse is not true, at least not where venue is based upon the defendant's presence in the county.  Physical presence is sufficient to vest a court with jurisdiction over a defendant.  By designating Houston as Cardinal States' place of business, Cardinal States is present in Texas regardless of where it actually carries on the partnership business, and therefore, we hold that the trial court did not err in finding Cardinal States is amenable to jurisdiction in Texas.

*Id.* (citations omitted) (citing *Burnham v. Superior Court of Cal.*, 495 U.S. 604, 619, 110 S. Ct. 2105, 2115 (1990)) ("The short of the matter is that jurisdiction

13

based on physical presence alone constitutes due process because it is one of the continuing traditions of our legal system that define the due process standard of 'traditional notions of fair play and substantial justice.'").

This case is factually similar to *Cardinal States* because, like Conoco's argument that general jurisdiction existed over Cardinal States because its partnership agreement identified Houston as its principal place of business, Donna argues here that general jurisdiction exists over Dugas, LP because its partnership agreement identified Aubrey, Texas, as its principal place of business. But unlike in *Cardinal States*, in which Cardinal States did not challenge Conoco's contention that its principal place of business was Houston, here, Dugas, LP disputes that its principal place of business is Texas, directing us to Freeny's affidavit in which she states that Dugas, LP's principal place of business is Tennessee, not Texas. Dugas, LP thus contends that "Freeny's affidavit establishes that no overt acts were taken by Dugas, LP in Texas and the trial court's conclusion of law that general jurisdiction rests on such alleged conduct is erroneous."

Contrary to Dugas, LP's argument, the evidence is not legally or factually insufficient to support the trial court's determination to resolve the place-of-business dispute in favor of Donna simply because Dugas, LP points to a single piece of evidence that contradicts the declaration in its own partnership agreement that its principal place of business is Texas. This is because there is other evidence relevant to the special appearance inquiry that supports the trial

14

court's finding. Specifically, the address listed in Dugas, LP's partnership agreement—4801 South Highway 377, Aubrey, Texas 76227—is the exact same address where Bruce and Donna lived when they moved to Texas in 1995. Dugas, LP's general partner is Dugas Asset Management Corp., whose address is also identified in the partnership agreement as 4801 South Highway 377, Aubrey, Texas 76227. Bruce—not Cal or Steve or any of Bruce's other siblings—signed the partnership agreement as "President" of Dugas Asset Management Corp. Under the terms of the partnership agreement, Dugas Asset Management Corp., as general partner, was tasked with the responsibility of managing Dugas, LP,[9] which exists as a result of the limited partnership agreement entered into between its general partner and its limited partners.[10]

Significantly, the purposes of Dugas, LP are "to buy, sell, invest in, operate[,] and manage such securities, real estate, and other assets as the General Partner may determine"; to consolidate those investments; and to pool and protect those assets. The *only* asset of Dugas, LP that is identified in the partnership agreement is Dugas Family Partners, a Texas General Partnership.

---

[9]The partnership agreement states that "[t]he General Partner alone shall be responsible for the management of the Partnership's business" and shall "(i) contribute its time, skill, energy, advice[,] and experience to the management of the Partnership's business; (ii) determine all matters relating to the financing, management, and operation of the assets and property of the Partnership; and (iii) manage the Partnership."

[10]The partnership agreement expressly provides that Dugas, LP was formed by its general partner, Dugas Asset Management Corp., and Dugas, L.P.'s limited partners.

15

The partnership agreement lists the fair market value of Dugas Family Partners at over $164 million. Therefore, based on this record, Dugas, LP's only function is to manage the valuable assets of a Texas General Partnership—an activity that requires Dugas, LP to utilize Texas-based assets. *See Retamco*, 278 S.W.3d at 339–40 (reasoning that jurisdiction exists over nonresident in part based on nonresident's management of a Texas asset).

Dugas, LP argues that the principal-place-of-business declaration was not an overt act of the entity itself but a unilateral act performed by the individuals who formed the entity and that the declaration is not a relevant contact to consider in the minimum contacts analysis because it was made more than ten years before suit was filed. Unlike Donna, who cited and relied on *Cardinal States*, Dugas, LP does not direct us to any authority holding that we may not consider the provision in the partnership agreement for purposes of determining whether personal jurisdiction exists over the limited partnership formed by the agreement.[11] The partnership agreement that Donna directs us to governs Dugas, LP, not some other limited partnership. Aside from Freeny's affidavit, there is no evidence that Dugas, LP has not operated under the partnership

---

[11]The two cases that Dugas, LP cites are inapposite. *See BMC Software*, 83 S.W.3d at 798 (considering whether nonresident entity was alter ego of corporation headquartered in Houston); *Tuscano v. Osterberg*, 82 S.W.3d 457, 466–67 (Tex. App.—El Paso 2002, no pet.) (addressing fiduciary shield doctrine).

16

agreement since 1998.[12]   And unlike with its name, Dugas, LP has never amended the principal-place-of-business declaration.   The principal-place-of-business declaration is, therefore, a proper contact to consider for purposes of considering personal jurisdictional.

Under the appropriate standards of review, the evidence is legally and factually sufficient to support the trial court's finding that Dugas, LP's principal place of business is Texas.  In light of the sufficient evidence connecting Dugas, LP with Texas, we cannot conclude that Dugas, LP's listing the principal place of business as Aubrey, Texas, was merely fortuitous and not made for the purpose of deriving some benefit or advantage therefrom.  *See Michiana*, 168 S.W.3d at 785; *see also Retamco*, 278 S.W.3d at 339–40 (reasoning that the minimum contacts analysis is focused on the quality and nature of the defendant's contacts, rather than their number).  Considering this and the relevant caselaw, the trial court's conclusion that general jurisdiction exists over Dugas, LP because its principal place of business is in Texas is not erroneous.  *See Cardinal States*, 2001 WL 82322, at *4.  Accordingly, we hold that the trial court did not err by determining that Dugas, LP failed to negate all bases of personal jurisdiction, particularly, general jurisdiction.

---

[12]Indeed, the number of limited partners climbed to fifteen as of December 31, 2008.

## B.    Fair Play and Substantial Justice

Dugas, LP contends that it would be unduly burdened by a trial in Texas because all of the actions and omissions that are the bases of Donna's claims against Dugas, LP occurred in Tennessee.   We cannot completely agree because we held above that the evidence is legally and factually sufficient to support the trial court's finding that Dugas, LP's principal place of business is Texas.  Further, Dugas, LP argues that the interests of Texas in adjudicating the dispute are minimal, but part of Donna's claims against Dugas, LP concern a partition of real property in Texas, and Texas has a substantial interest in adjudicating probate disputes, including property held in Texas.  *See Brittingham-Sada de Powers v. Ancillary Estate of Brittingham-McClean*, 158 S.W.3d 518, 525 (Tex. App.—San Antonio 2004, pet. denied).  Dugas, LP contends that there is a risk of inconsistent rulings or judgments if the trial court exercises jurisdiction, but the trial court granted Dugas, LP's plea in abatement and stayed the claims that Donna asserted against Dugas, LP, "pending resolution in the Kentucky courts."  We cannot conclude that Dugas, LP presented a compelling case that other considerations would render exercising jurisdiction unreasonable.  *See Guardian Royal*, 815 S.W.2d at 231.

We hold that the trial court did not err by denying Dugas, LP's special appearance.  Accordingly, we overrule Dugas, LP's first issue.

18

## V. SPECIFIC JURISDICTION

In the second issue, the Dugas 1998 Trust, the Grandchild Trust, and Cal and Steve as co-trustees of the Dugas 1998 Trust argue that specific jurisdiction does not exist over each of them. They contend that Donna and Laura failed to meet their burden of pleading facts necessary to support specific jurisdiction, that they have no contacts with Texas that are sufficient to support an exercise of specific jurisdiction, and that the *Seijo* decision referenced in the trial court's order is distinguishable from the facts of this case.

The Supreme Court in *Burger King* discussed purposeful availment and reasoned that

> where the defendant "deliberately" has engaged in significant activities within a State, *or has created "continuing obligations" between himself and residents of the forum*, he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by "the benefits and protections" of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well.

471 U.S. at 475–76, 105 S. Ct. at 2184 (emphasis added) (citations omitted). Several courts have subsequently considered a nonresident defendant's "continuing obligations" between himself and the residents of the forum in determining whether the defendant was amenable to personal jurisdiction. *See, e.g., Seijo v. Miller*, 425 F. Supp. 2d 194, 200 (D. P.R. 2006); *Cummings v. Pittman*, 239 S.W.3d 77, 87 (Ky. 2007).

In *Seijo*, the district court addressed whether the plaintiffs had established the existence of specific jurisdiction over two nonresident defendants who were

19

the trustees of a trust in which the plaintiffs were the sole beneficiaries of its undistributed income. 425 F. Supp. 2d at 197. The trust was established in Louisiana for the benefit of the plaintiffs' mother, Mrs. Seijo. *Id.* Mrs. Seijo was a resident of Puerto Rico when the trust was executed and received several trust disbursements while in Puerto Rico. *Id.* at 197, 200. After she died, the plaintiffs, her children, sued the trustees, who were both residents of Louisiana, for an accounting and damages. *Id.* at 197. The district court noted that the litigation arose out of the defendants' actions in administering the trust, which was established for the benefit of Mrs. Seijo, a resident of Puerto Rico; that the plaintiffs' specific allegations were that the defendants, as trustees of the 1996 trust, did not make proper disbursements to Mrs. Seijo; that Mrs. Seijo was a resident and domiciliary of Puerto Rico at the time the trust was established; that the grantor of the trust was a domiciliary of Puerto Rico at the time of his death; and that several trust disbursements were indeed sent to Mrs. Seijo in Puerto Rico. *Id.* at 200–01. Concluding that the trustee defendants had purposefully availed themselves of the forum, the district court reasoned,

> These circumstances are sufficient to establish purposeful availment on the part of the defendants in this case. As trustees, they voluntarily took on the responsibility of administering a trust established for the benefit of a resident of Puerto Rico. Entering into this agreement, which had a substantial connection to Puerto Rico, made it foreseeable that the defendants may be brought before a federal court in Puerto Rico.

20

*Id.* at 200.[13]

In *Cummings*, the Supreme Court of Kentucky relied on *Seijo* as persuasive authority. 239 S.W.3d at 87 (Ky. 2007). There, the court held that the nonresident defendant lawyer—who conceded that he was subject to personal jurisdiction in Kentucky for claims arising from legal services performed but challenged the exercise of jurisdiction over him in his role as trustee of a trust that he had drafted—was amenable to personal jurisdiction in Kentucky as a trustee. *Id.* at 89–90. Relying in part on *Burger King*, the court stated,

> One may reasonably infer that from the outset Mr. Boose anticipated performing ongoing fiduciary services with respect to the trust. Necessarily, such services were to be performed for benefit of Kentucky citizens and would require an extended period of time. *Burger King* recognized that intentionally creating continuing obligations with residents of the forum would be sufficient to subject the nonresident to the burden of litigating in the forum.

*Id.* at 87.

*Burger King*, *Seijo*, and *Cummings* are instructive on the arguments that Appellants raise in the second issue.

---

[13]Appellants argue that *Seijo* does not support the trial court's conclusion that specific jurisdiction exists over them because "the standards applied by a federal court in considering a motion to dismiss for lack of personal jurisdiction differ[] from that employed by our state court." They point out that the district court accepted evidence as true and, unlike in this case, did not have to resolve factual disputes before conducting the minimum contacts analysis. To the extent this is a distinction between the standard applied by the district court in *Seijo* and the standard we apply in this case, it does not render *Seijo* inapposite. We rely on *Seijo* only for its substantive (persuasive) authority regarding the exercise of specific jurisdiction over a nonresident trustee who voluntarily accepted the responsibility of administering a trust for the benefit of a resident of the forum.

21

## A.    Pleadings

Regarding Appellants' challenges to Appellees' pleadings, Donna alleged in part the following:  the Dugas 1998 Trust "is doing business in the State of Texas by, for example, entering into contracts, making distributions and/or loans to individuals in Texas . . . , and negotiating payments in Texas"; the Grandchild Trust "is doing business in the State of Texas by, for example, entering into contracts, making distributions and/or loans to individuals in Texas . . . , and negotiating payments in Texas"; "the Siblings [Laura Jo, Cal, and Steve] created reciprocal trusts for the benefit of each of their respective children.  The siblings agreed to serve as trustee and co-trustee of each others' trusts.  One of these reciprocal trusts was the Dugas 1998 Trust"; Bruce "was the beneficiary of several grantor trusts, including the [Grandchild Trust] and Dugas 1998 Trust [from] which he was and is entitled to receive distributions."

Laura alleged in part the following:  "[A]ssuming Bruce failed to exercise his power of appointment granted in the [Dugas 1998 Trust], Laura . . . became [a] current beneficiar[y] of the [Dugas 1998 Trust]"; "At the time that the [Dugas 1998 Trust] was executed, and Cal and Steve Turner agreed to serve as Bruce's Co-Trustees, Bruce was a longtime resident of Texas.  Cal and Steve Turner knew that their duties would involve significant contacts with Texas and with a Texas beneficiary"; "The terms of the [Dugas 1998 Trust] require that Steve and Cal Turner investigate the beneficiary's circumstances to determine how much should be distributed for the beneficiary's health, support, and education.  That

22

investigation necessarily requires regular contact with Texas"; and "Despite her significant rights in the [Dugas 1998 Trust] . . . , Laura is forced to live in borderline poverty due to the neglect of her Co-Trustees. . . . [A]s far as she knows[,] the Co-Trustees have personally made no investigation regarding her health, education, or support."

We hold that Donna and Laura pleaded sufficient allegations to bring the defendants within the provisions of the Texas long-arm statute. *See Burger King*, 471 U.S. at 475–76, 105 S. Ct. at 2184; *Seijo*, 425 F. Supp. 2d at 200; *Cummings*, 239 S.W.3d at 87; *Huynh*, 180 S.W.3d at 619; s*ee also Retamco*, 278 S.W.3d at 337 (reasoning that because the Texas long-arm statute's broad doing-business language allows the statute to reach as far as the federal constitutional requirements of due process will allow, "we only analyze whether [appellee's] acts would bring [appellee] within Texas'[s] jurisdiction consistent with constitutional due process requirements"). We overrule this part of Appellants' second issue.

### B. Dugas 1998 Trust, Cal, and Steve—Minimum Contacts

The special appearance evidence demonstrates that Bruce was a resident of Texas when both Cal and Steve agreed to become co-trustees of the Dugas 1998 Trust, which was created in November 1998. Cal testified in his deposition that when he agreed to become a co-trustee, he knew that Bruce was a resident of Texas and he understood that he would have obligations to Bruce under the trust. Cal agreed that he currently has obligations under the trust to both Laura

23

and William, but he stated that he relied on the Family Office for processing distribution requests.

Steve testified that he knew Bruce was a resident of Texas at some point from 1998 until his death, and he agreed that he accepted continuing obligations to the beneficiaries of the Dugas 1998 Trust when he became a co-trustee in 1998 and that he has continuing obligations to Laura as a beneficiary of the trust.

Among other things, the Dugas 1998 Trust required Cal and Steve to

distribute to any one or more of the named beneficiary and his or her descendants living at the time of the distribution as much of the net income and principal of the trust named for the named beneficiary . . . *as the trustee from time to time determines to be required* for their respective health, support[,] and education, and the trustee . . . believes desirable for their respective interests. [Emphasis added.]

The Dugas 1998 Trust thus required Cal and Steve as co-trustees to make ongoing determinations concerning the amount of distributions necessary for Bruce's health, support, and education. The record shows that the Dugas 1998 Trust made numerous distributions to Bruce during his lifetime, including from 2003 to 2007. Wilds, however, stated in his affidavit that the Dugas 1998 Trust "does not do business in Texas, and has never done business in Texas."

The Dugas 1998 Trust, Cal, and Steve rely on *Balken v. Mellon Bank, N.A.*, and the authorities cited therein to support their argument that specific jurisdiction does not exist. No. 05-97-01520-CV, 2000 WL 979705, at *4 (Tex. App.—Dallas 2000, no pet.) (not designated for publication) In that case, Balken, a "remaining" beneficiary of a trust of which Mellon Bank was the trustee, sued

24

Mellon Bank in Texas for negligence. *Id.* at *1. The court of appeals affirmed the trial court's judgment sustaining Mellon Bank's special appearance, stating in part that the distribution of trust assets to the primary beneficiary, who had been a Texas resident, was insufficient to establish minimum contacts. *Id.* at *3–4. But *Balken* is distinguishable from this case because the plaintiff there was a nonresident of Texas. *Id.* at *1. *Balken* thus involved a nonresident of Texas suing a nonresident of Texas in Texas. In this case, Laura and Donna are both Texas residents and have been so since the Dugas 1998 Trust was created.

We hold that the evidence is sufficient to support the trial court's implied findings for specific jurisdiction. Because Cal and Steve purposefully created ongoing obligations between themselves and Bruce, a Texas resident, when they agreed to become co-trustees of the Dugas 1998 Trust, which made numerous distributions to Bruce during his lifetime, each could have reasonably anticipated being haled into a Texas court to defend against Donna's and Laura's claims arising from or relating to those contacts. Therefore, we hold that the trial court did not err by determining that the Dugas 1998 Trust, Cal, and Steve failed to negate all bases of personal jurisdiction and by denying the special appearances of the Dugas 1998 Trust and of Cal and Steve as co-trustees of the Dugas 1998 Trust. *See Burger King*, 471 U.S. at 475–76, 105 S. Ct. at 2184; *Seijo*, 425 F. Supp. 2d at 200; *Moki Mac*, 221 S.W.3d at 572, 576; *Cummings*, 239 S.W.3d at 87. We overrule this part of Appellants' second issue.

### C.    Grandchild Trust—Minimum Contacts

Unlike the Dugas 1998 Trust, which was created in part for the benefit of Bruce, a resident of Texas in 1998, the Grandchild Trust was created in 1989—before Bruce moved to Texas.[14]   Although Wilds's affidavit confirms that distributions were made to Bruce from the Grandchild Trust while Bruce lived in Texas, those distributions were made to Bruce in Texas only as a result of his unilateral act of moving to Texas several years after the creation of the trust. Unlike the trusts in *Seijo* and *Cummings*, which were created for the benefit of a beneficiary who was a resident of the forum, the Grandchild Trust was not created for the benefit of a Texas resident, nor did its trustee voluntarily undertake continuing obligations for the benefit of a Texas resident.  *See Seijo*, 425 F. Supp. 2d at 200–01; *Cummings*, 239 S.W.3d at 86–87; *see also Hanson v. Denckla*, 357 U.S. 235, 251–52, 78 S. Ct. 1228, 1238–39 (1958).   Donna directs us to no other evidence supporting the trial court's conclusion that specific jurisdiction exists over the Grandchild Trust.   Accordingly, we hold that the Grandchild Trust negated all bases of personal jurisdiction asserted by Donna and that the trial court erred by concluding that specific jurisdiction exists over the Grandchild Trust.  We sustain this part of Appellants' second issue.

---

[14]Donna states in her brief, "For the [Grandchild Trust], the beneficiaries resided in Texas on the date the Trustees agreed to take on the duties set forth in the Trusts."  But we have not found any evidence in the record to support this statement.  Instead, Donna testified in her deposition that she and Bruce moved to Texas sometime around 1995.

### D.     Fair Play and Substantial Justice

The Dugas 1998 Trust, Cal, and Steve argue that asserting personal jurisdiction over them does not comport with fair play and substantial justice. Their arguments mirror those made by Dugas, LP above.  With one exception, our analysis remains unchanged.  Cal and Steve's father founded Dollar General. Cal testified that he has a lease agreement for a private jet that he uses maybe fifty hours a year, and Steve testified that he owns a Turbo Prop jet that flies about sixty hours a year.  Both have visited Texas numerous times in the course of working for Dollar General, and both are residents of Tennessee, not Kentucky, where Pardue filed his "Verified Petition for the Settlement of the Estate of William Bruce Dugas, Deceased, and Complaint for Declaratory Judgment."[15]  Laura, on the other hand, states that she is a "high school student of very limited personal means."  We cannot conclude that the Dugas 1998 Trust, Cal, and Steve presented a compelling case that other considerations would render exercising specific jurisdiction unreasonable.  *See Guardian Royal*, 815 S.W.2d at 231.  Therefore, we overrule the remainder of Appellants' second issue.

### VI. DOMINANT JURISDICTION

In their third issue, Appellants argue that the trial court erred by denying their plea to the jurisdiction because the "Allen Circuit [C]ourt" in Kentucky has

---

[15]Cal and Steve, as co-trustees of the Dugas 1998 Trust, are defendants in that action.

dominant jurisdiction over the matters pertaining to the administration of Bruce's estate.

The general rule of dominant jurisdiction is that where a suit would be proper in more than one county, the county in which the suit was first filed acquires dominant jurisdiction to the exclusion of other counties of equal stature. *Curtis v. Gibbs*, 511 S.W.2d 263, 267 (Tex. 1974). However, "the mere pendency of an action in one state will not be a ground for abating a suit in another state between the same parties and involving the same subject matter." *Crown Leasing Corp. v. Sims*, 92 S.W.3d 924, 927 (Tex. App.—Texarkana 2002, no pet.). This is because "[c]ourts of sister states are considered foreign to each other, and a suit pending in another state may not be pleaded in abatement of another suit involving the same subject matter brought in another state." *Id.*

Appellants did not argue in their plea to the jurisdiction that a Kentucky court has dominant jurisdiction over the claims asserted by Donna; instead, they raised the complaint in their plea in abatement. *See* Tex. R. App. P. 33.1. The trial court specifically granted any plea in abatement for the claims asserted by Donna against Dugas, LP; the Dugas 1998 Trust; and the Grandchild Trust, staying those claims "in the interest of comity," "pending resolution in the Kentucky proceedings." To the extent Appellants preserved this argument for appellate review, the only petition pending in "Allen Circuit [C]ourt" is Pardue's "Verified Petition for the Settlement of the Estate of William Bruce Dugas, Deceased, and Complaint for Declaratory Judgment," which was filed *after*

28

Donna filed her original petition in Texas.[16] Nor do Appellants direct us to any authority contrary to *Crown Leasing*'s reasoning that dominant jurisdiction generally does not apply to suits in different states. We overrule this part of Appellants' third issue.

Appellants also argue that the trial court erroneously denied their plea in abatement in regard to the claims brought by Laura because of the possibility of conflicting rulings. We fail to see how there is any possibility of conflicting rulings, however, because the claims that Laura has asserted against the co-trustees—seeking an accounting of the Dugas 1998 Trust and alleging that Cal and Steve breached fiduciary duties that they owed to her as trustees of the Dugas 1998 Trust by failing to investigate her needs and by failing to make sufficient distributions to her—have not been raised in the Kentucky litigation. We overrule Appellants' third issue.

---

[16]The petition to probate Bruce's will was filed in an Allen "District/Probate" court.

## VII. CONCLUSION

Having sustained part of Appellants' second issue, we reverse the part of the trial court's order denying the Grandchild Trust's special appearance and render judgment dismissing Donna's claims against the Grandchild Trust. Having overruled Appellants' remaining issues, we affirm the remainder of the trial court's order.

BILL MEIER
JUSTICE

PANEL:  DAUPHINOT, WALKER, and MEIER, JJ.

WALKER, J. filed a concurring and dissenting opinion.

DELIVERED:  March 31, 2011

# APPENDIX

## Families

•<u>H. Calister Turner, Sr.'s Children</u>:
     -Hurley Calister Turner, Jr. (Cal).
     -James Stephen Turner (Steve).
     -Laura Jo Turner Dugas.

•<u>Laura Jo Turner Dugas's Children</u>:
     -Wayne F. Dugas, Jr.
     -Stephen H. Dugas.
     -William Bruce Dugas (Bruce).

•<u>William Bruce Dugas and Donna Neal Goode Dugas</u>:
     -Married 1984.
     -Children:  William Bruce Dugas, II and Laura Nicole Dugas.
     -Moved to Texas 1995.
     -Ceased living together 2005.
     -Bruce lived in Kentucky at his death.
     -Donna, Laura, and William live in Texas.

## Entities

•<u>William Bruce Dugas Grandchild Trust (Grandchild Trust)</u>:
     -December 1989.
     -H. Calister Turner, Sr. and Steve entered into trust agreement for the creation of the Grandchild Trust.
     -H. Calister Turner, Sr. signed trust agreement as grantor.  Steve signed as trustee.
     -Created "for the benefit of the Grantor's grandchild, [Bruce]."

•<u>Dugas 1998 Irrevocable Trust (Dugas 1998 Trust)</u>:
     -November 1998.
     -Laura Jo, as settlor, created the Dugas 1998 Trust.
     -Cal and Steve are trustees.
     -Trustees responsible for dividing and allocating the principal among three separate trusts named for Laura Jo's three children, including Bruce.

•<u>Dugas Limited Partnership (Dugas, LP)</u>:

    -February 1998.

    -General partner is Dugas Asset Management Corp.

    -Bruce signed as "President" of Dugas Asset Management Corp.

    -Partnership agreement listed only one asset of Dugas, LP:  Dugas Family Partners, a Texas General Partnership.

    -Purposes is "to buy, sell, invest in, operate[,] and manage such securities, real estate, and other assets as the General Partner may determine"; to consolidate investments; and to pool and protect assets.

    -Principal place of business and principal office is "4801 South Highway 377, Aubrey, Texas  76227."

•<u>The Family Office L.L.C.</u>:

    -Tennessee limited liability company.

    -Established by Turner and Dugas families to provide services to Turner and Dugas family members, their trusts, and the entities that they control.



# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-09-00463-CV

DUGAS LIMITED PARTNERSHIP,                                    APPELLANTS
DUGAS 1998 IRREVOCABLE
TRUST, WILLIAM BRUCE DUGAS
GRANDCHILD TRUST, JAMES
STEPHEN TURNER AND HURLEY
CALISTER TURNER, JR., CO-
TRUSTEES OF THE DUGAS 1998
IRREVOCABLE TRUST F/B/O
WILLIAM BRUCE DUGAS

V.

DONNA NEAL GOODE DUGAS                                        APPELLEES
AND LAURA NICOLE DUGAS

----------

### FROM THE PROBATE COURT OF DENTON COUNTY

----------

## CONCURRING AND DISSENTING OPINION

----------

### I. INTRODUCTION

I agree with the Majority Opinion's holdings that specific jurisdiction exists concerning Appellees Donna Neal Goode Dugas and Laura Nicole Dugas's

claims against Appellants Dugas 1998 Irrevocable Trust, William Bruce Dugas Grandchild Trust, and James Stephen Turner and Hurley Calister Turner, Jr., Co-Trustess of the Dugas 1998 Irrevocable Trust f/b/o William Bruce Dugas. I concur with the Majority Opinion's affirmance of the trial court's order denying the special appearances of these Appellants.

I cannot agree, however, with the Majority Opinion's holding that Texas courts may exercise general jurisdiction over Appellant Dugas Limited Partnership (Dugas LP). The special appearance evidence conclusively established that, despite a ten-year-old principal-place-of-business statement in Dugas LP's initial partnership agreement, in fact Dugas LP never had its principal place of business in Texas and never did business in Texas. The minimum contacts required by the United States Constitution in order to comport with federal due process in subjecting Dugas LP to the general jurisdiction of Texas courts must be based on factual reality, not on an untrue statement in a ten-year-old partnership agreement. Because Dugas LP itself possesses no minimum contacts with Texas, the Majority Opinion looks to the contacts of an entity owned by Dugas LP in its minimum contacts analysis. But the minimum contacts required by the United States Constitution in order to comport with federal due process in subjecting Dugas LP to the general jurisdiction of Texas courts must be based on the contacts of Dugas LP itself, not upon a third party's contacts with Texas. Because the majority holds that Dugas LP is subject to the general jurisdiction of Texas courts based solely on a ten-year-old principal-place-of-

2

business statement in Dugas LP's initial partnership agreement and on Dugas LP's ownership of an entity that possesses some contacts with Texas, I am forced to dissent.

## II. SPECIAL APPEARANCE BURDENS OF PLEADING AND PROOF

The plaintiff and the defendant bear shifting burdens of proof in a special appearance. *Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 658 (Tex. 2010). The plaintiff bears the initial burden to plead sufficient allegations to bring the nonresident defendant within the reach of Texas's long-arm statute. *Id*. Once the plaintiff has pleaded sufficient jurisdictional allegations, the defendant filing a special appearance bears the burden to negate all bases of personal jurisdiction alleged by the plaintiff. *Id*. Because the plaintiff defines the scope and nature of the lawsuit, the defendant's corresponding burden to negate jurisdiction is tied to the allegations in the plaintiff's pleading. *Id*. The defendant can negate jurisdiction on either a factual or legal basis. *Id*. at 659. Factually, the defendant can present evidence that it has no contacts with Texas, effectively disproving the plaintiff's allegations. *Id*. The plaintiff can then respond with its own evidence that affirms its allegations, and it risks dismissal of its lawsuit if it cannot present the trial court with evidence establishing personal jurisdiction. *Id*. Legally, the defendant can show that even if the plaintiff's alleged facts are true, the evidence is legally insufficient to establish jurisdiction; that the defendant's contacts with Texas fall short of purposeful availment; or that traditional notions of fair play and substantial justice are offended by the exercise of jurisdiction. *Id.*

3

### III. The Pleadings and The Evidence

In their original petition, Appellees pleaded,

> Defendant Dugas Limited Partnership ("Dugas, LP"), is a limited partnership incorporated under the laws of the State of Delaware, with a corporate general partner, Dugas Asset Management Corp., a Delaware Corporation. Dugas LP may be served with process pursuant to the Texas Long Arm Statute. Dugas, LP is doing business in the State of Texas by, for example, entering into agreements, making distributions and/or loans to individuals in Texas, retaining counsel in Texas, negotiating payments in Texas, and asserting rights to real and personal property in Texas, but has not designated a resident agent in the State of Texas upon whom service of process can be made.[1]

In its special appearance, Dugas LP pleaded,

> Defendant Dugas Limited Partnership is a limited partnership established under the laws of Delaware. Dugas Limited Partnership does not do business in the State of Texas. Dugas Limited Partnership owns no assets in the State of Texas. Dugas Asset Management Corp., a Delaware corporation, is its general partner. Dugas Asset Management Corp. does not do business in the State of Texas. Dugas Asset Management Corp. does not own assets in the State of Texas.

In their response to Dugas LP's special appearance, Appellees pleaded,

> Dugas LP is a resident of Texas, and is therefore subject to jurisdiction on all claims asserted against it in this case.
>
> . . . .
>
> By designating Aubrey, Texas as Dugas LP's principal place of business, Dugas LP is present in Texas regardless of where it

---

[1]In an amended petition filed after Dugas LP filed its special appearance, Appellees added a sentence, pleading that Dugas LP's general partner was Dugas Asset Management Corporation, a Delaware Corporation, and that Dugas LP was doing business in Texas by "designating its principal place of business in Texas."

4

actually carries on the partnership business. The Dugas LP Agreement sets out clearly that its principal place of business is in Denton County, Texas. Under Texas law, venue is proper against a partnership wherever its principal office is located. Personal jurisdiction is proper where venue is based on the defendant's presence in the county. [Internal citations omitted.]

At the special appearance hearing, Dugas LP proffered the affidavits of David M. Wilds and Amy Freeney. Wilds's affidavit indicates that since 1998, he has served as the Chief Financial Officer for The Family Office, L.L.C., a Tennessee limited liability company established by the Turners and the Dugases to provide services to their family members and their trusts. Wilds explained,

> The Dugas Limited Partnership is a limited partnership organized under Delaware law. It was created in 1998. Its general partner is Dugas Asset Management Corporation, a Delaware corporation. Dugas Asset Management Corporation owns no real estate in Texas, it has no bank accounts in Texas, it has never filed suit in Texas, nor has it ever sought protection from creditors in Texas. Dugas Asset Management Corporation has no offices, no employees, and does not do business in Texas. Dugas Limited Partnership owns no real estate in Texas, it has no assets in Texas, it has no bank accounts in Texas, it has never filed suit in Texas, nor has it ever sought protection from creditors in Texas. Other than retaining counsel in Texas for representation in the lawsuit filed by [Appellees] against it in the Denton County Probate Court, the Dugas Limited Partnership does not do business in Texas.

Freeney's affidavit stated that she is the tax manager for The Family Office and that

> Dugas Limited Partnership is a limited partnership organized under Delaware law. It was created in 1998. Its general partner is Dugas Asset Management Corporation, a Delaware corporation. Dugas Limited Partnership has always had its principal place of business in Nashville[,] Tennessee, all of its books and records have always been kept there and I have been the custodian of such records since the inception. Dugas Limited Partnership has never

5

maintained another office and has never employed any employees. It has never had its principal office in Texas. All the business of Dugas Limited Partnership is conducted in and through The Family Office in Nashville, Tennessee, since 1998. Dugas Limited Partnership has never designated a registered agent for service of process in Texas.

## IV. THE LAW CONCERNING GENERAL JURISDICTION

A nonresident defendant is subject to the personal jurisdiction of Texas courts if (1) the Texas long-arm statute authorizes the exercise of jurisdiction, and (2) the exercise of jurisdiction does not violate federal and state constitutional due process guarantees. *Id.* at 657; *Schlobohm v. Schapiro*, 784 S.W.2d 355, 356 (Tex. 1990). The broad "doing business" language in Texas's long-arm statute allows the trial court's jurisdiction to "reach as far as the federal constitutional requirements of due process will allow." *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 575 (Tex. 2007) (quoting *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 226 (Tex. 1991)). The Due Process Clause protects a defendant's liberty interest in not being subject to the binding judgments of a forum with which it has established no meaningful "contacts, ties, or relations," that is "minimum contacts." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471–72, 105 S. Ct. 2174, 2181–82 (1985). A defendant establishes minimum contacts with a state when it purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws. *Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 338 (Tex. 2009). The focus of a

6

due process minimum contacts analysis is on the nonresident defendant's activities and expectations. *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 790 (Tex. 2005); *Am. Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 806 (Tex. 2002), *cert. denied*, 537 U.S. 1191 (2003). There are three parts to a purposeful availment inquiry: (1) only the nonresident defendant's contacts with the forum are relevant, not the unilateral activity of another party or a third person; (2) the contacts relied on must be purposeful rather than random, fortuitous, or attenuated; and (3) the nonresident defendant must seek some benefit, advantage, or profit by availing itself of the jurisdiction. *See Moki Mac River Expeditions*, 221 S.W.3d at 575; *Michiana Easy Livin' Country, Inc.*, 168 S.W.3d at 784–85.

A nonresident defendant's contacts with a forum state can give rise to (a) general jurisdiction or (b) specific jurisdiction. *See PHC-Minden, L.P. v. Kimberly-Clark Corp.*, 235 S.W.3d 163, 166 (Tex. 2007); *Moki Mac River Expeditions*, 221 S.W.3d at 575–76. General jurisdiction is a more demanding minimum-contacts analysis, requiring a showing that the defendant conducted substantial activities within the forum. *CSR, Ltd. v. Link*, 925 S.W.2d 591, 595 (Tex. 1996). General jurisdiction exists when the defendant in question has "continuous and systematic general business contacts" with the forum state. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416, 104 S. Ct. 1868, 1873 (1984). General jurisdiction is based upon the concept of a bargain between the nonresident defendant and the forum state. If the defendant has

7

established continuous and systematic general business contacts with the state, it is deemed to have purposely availed itself of the protections and benefits of the forum's law, and thereby to have consented to suit in the forum. *See Bearry v. Beech Aircraft Corp.*, 818 F.2d 370, 375 (5th Cir. 1987).

## V. STANDARD OF REVIEW

Whether a court can exercise personal jurisdiction over nonresident defendants is a question of law, and thus we review de novo the trial court's determination of a special appearance. *Moki Mac River Expeditions*, 221 S.W.3d at 574; *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). "When [as here] a trial court does not issue findings of fact and conclusions of law with its special appearance ruling, all facts necessary to support the judgment and supported by the evidence are implied." *BMC Software*, 83 S.W.3d at 795.

## VI. DUGAS LP IS NOT SUBJECT TO THE GENERAL JURISDICTION OF TEXAS COURTS

Once Appellees pleaded that Dugas LP was doing business in Texas by entering into agreements, making distributions and/or loans to individuals in Texas, retaining counsel in Texas, negotiating payments in Texas, and asserting rights to real and personal property in Texas, the burden shifted to Dugas LP to negate these bases of jurisdiction either factually or legally. *See Kelly*, 301 S.W.3d at 658. Dugas LP factually negated Appellees' pleaded bases for jurisdiction through the affidavits of Wilds and Freeney. As set forth above, Wilds's and Freeney's affidavit testimony specifically factually negated Appellees'

8

allegations. The affidavits established that neither Dugas LP nor its general partner Dugas Asset Management Corporation did business in Texas, owned real estate in Texas, had any bank accounts in Texas, had ever filed suit in Texas, or had ever sought protection from creditors in Texas. Freeney's affidavit affirmatively stated that Dugas LP had never maintained an office outside of Tennessee, had never had its principal place of business anywhere but Tennessee, and conducted all business through its Tennessee office. Wilds's affidavit stated that Dugas Asset Management Corporation has no offices, no employees, and does not do business in Texas. Thus, the burden shifted back to Appellees to respond with their own evidence that affirmed their pleaded allegations. *See id*. at 659.

Appellees did not produce any evidence supporting their pleaded allegations. Instead, Appellees simply pointed to the statement in Dugas LP's ten-year-old initial partnership agreement that Dugas LP's principal place of business was in Texas. The statement in Dugas LP's initial ten-year-old partnership agreement, however, is legally insufficient to support general jurisdiction over Dugas LP. That is, Dugas LP legally negated this purported basis for jurisdiction by proving that although the fact is true—Dugas LP's initial ten-year-old partnership agreement does state that its principal place of business will be in Texas—this fact is legally insufficient to support personal general jurisdiction over Dugas LP because its contacts with Texas nonetheless fall short of purposeful availment. *See id.* (recognizing that defendant can legally negate

9

plaintiff's alleged basis for jurisdiction by proving that even if plaintiff's alleged facts are true, they fall short of establishing defendant's purposeful availment). Dugas LP legally negated this basis for jurisdiction because a due process minimum contacts analysis requires physical contacts with the forum state; words on a ten-year-old piece of paper that are not true cannot satisfy the federal consitutional due process minimum contacts analysis. *See Alenia Spazio, S.P.A., v. Reid*, 130 S.W.3d 201, 212 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) (holding that, in absence of special appearance evidence of "remaining officers operating in Texas or of any activity by USRT [a limited liability company] in Texas" after August 1999, special appearance evidence was legally insufficient to support finding that USRT's principal place of business was in Texas after August 1999 despite statement in limited liability company's agreement that "as of January 3, 1997" its principal place of business was in Houston), *cert. denied*, 549 U.S. 821 (2006); *see also Burger King Corp.*, 471 U.S. at 471–72, 105 S. Ct. at 2181–82 (recognizing that in order to subject a defendant to the binding judgments of a forum, the defendant must have meaningful contacts, ties, or relations with the forum).

Although no jurisdictional alter ego or veil-piercing theories were pleaded or argued by the parties, the Majority Opinion notes that

> [t]he *only* asset of Dugas, LP that is identified in the partnerhip agreement is Dugas Family Partners, a Texas General Partnership. The partnership agreement lists the fair market value of Dugas Family Partners at over $164 million. Therefore, based on this record, Dugas, LP's only function is to manage the valuable assets

10

of a Texas General Partnership—an activity that requires Dugas, LP to utilize Texas-based assets. [Citation omitted.]

The United States Supreme Court and the Texas Supreme Court have repeatedly instructed us that only the nonresident defendant's contacts with the forum are relevant, *not the unilateral activity of another party or a third person*. *See, e.g.*, *Burger King Corp.*, 471 U.S. at 474, 105 S. Ct. at 2183 ("The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State."); *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S. Ct. 1228, 1239–40 (1958) (same); *Moki Mac River Expeditions*, 221 S.W.3d at 575 (same); *Michiana Easy Livin' Country, Inc.*, 168 S.W.3d at 784–85 (same). Thus, the fact that Dugas LP may own an entity that does business in Texas is not relevant to a minimum contacts analysis in the absence of some jurisdictional alter ego or veil-piercing allegations and proof, which are not present in this case. *See, e.g.*, *PHC-Minden, L.P.*, 235 S.W.3d at 172–76 (discussing proof necessary for jurisdictional veil-piercing and concluding that court of appeals "erred in imputing Province's Texas contacts to Minden").

I cannot agree with the Majority Opinion's holding that two facts—a ten-year-old, inaccurate statement in Dugas LP's initial partnership agreement that Dugas LP's principal place of business was in Texas and Dugas LP's ownership of a Texas general partnership, a non-real property asset—somehow constitute "doing business in Texas" and somehow satisfy the rigorous minimum contacts analysis required by the Due Process Clause of the United States Constitution to

11

subject a defendant to the general jurisdiction of Texas courts. Neither of the facts relied upon in the Majority Opinion show that Dugas LP purposefully availed itself of the privilege of conducting activities within Texas. Neither of the facts relied upon in the Majority Opinion show that Dugas LP invoked the benefits and protections of Texas's laws. Neither of the facts relied upon in the Majority Opinion show that Dugas LP actually conducted any activities in Texas, much less substantial activities within Texas. Neither of the facts relied upon in the Majority Opinion show continuous and systematic contact by Dugas LP with Texas. Instead, the two facts relied upon in the Majority Opinion bear no relevance to the required minimum contacts analysis.

## VII. CONCLUSION

Because Dugas LP factually negated Appellees' pleaded bases for jurisdiction by establishing that it did not do business in Texas; because Appellees did not come forward with any evidence supporting their allegations that Dugas LP did do business in Texas; because Dugas LP legally negated Appellees' contention that the Texas courts possessed general jurisdiction over it based on the inaccurate statement in its ten-year-old initial limited partnership agreement; and because the majority's reliance on Dugas LP's ownership of a Texas general partnership that has contacts with Texas is not relevant in the absence of jurisdictional alter ego or veil-piercing pleadings, I would reverse the trial court's denial of Dugas LP's special appearance. Because the majority does not do so, I respectfully dissent to the Majority Opinion's holding that general

12

jurisdiction exists over Dugas LP. I would reverse the trial court's order denying Dugas LP's special appearance. I concur with the other holdings of the Majority Opinion.

SUE WALKER
JUSTICE

DELIVERED: March 31, 2011