

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-24-00331-CV

———————————————

IN RE LANNA DEE WOOD, AS TRUSTEE OF THE IRREVOCABLE GIFTING
TRUST OF LARRY M. RAMSEY FOR THE BENEFIT OF DAUGHTERS

---

On Appeal from the 16th District Court
Denton County, Texas
Trial Court No. 22-6579-16

---

Before Sudderth, C.J.; Bassel and Walker, JJ.
Memorandum Opinion by Chief Justice Sudderth

**MEMORANDUM OPINION**

## I. Introduction

Relator Lanna Dee Wood, as Trustee of the Irrevocable Gifting Trust of Larry M. Ramsey for the Benefit of Daughters, filed a special appearance, which the trial court denied after a hearing and then entered findings of fact and conclusions of law.[1]

Because this original proceeding arises out of a divorce case, an interlocutory appeal of the denial of her special appearance is unavailable to Relator. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(7) (stating that the denial of a special appearance is an appealable interlocutory order "except in a suit brought under the Family Code"); *In re J.W.L.*, 291 S.W.3d 79, 83 (Tex. App.—Fort Worth 2009, orig. proceeding [mand. denied]) ("Normally, the grant or denial of a special appearance is subject to an interlocutory appeal; however, if it involves a family law matter, there is

---

[1]Relator specifically challenges the trial court's Fact Findings 12, 13, 14, 15, 16, 17, 18, 19, and 20. Each of these findings is extremely generic, finding that Relator, as trustee, (12) "has purposefully availed herself in her capacity as Trustee to the privileges and benefits of the State of Texas, by engaging in substantial activities within the State of Texas"; (13) "has purposefully consummated acts and transactions in the State of Texas"; (14) has "activities in Texas [that] are continuous and systematic and/or give rise to [Real Party in Interest's] . . . cause of action"; (15) "purposefully availed herself of the privilege of conducting activities within Texas, thus invoking the benefits and protections of its laws"; and (16) has "contacts with Texas [that] are such that she should reasonably anticipate being haled into court in Texas," and that (17) exercising jurisdiction over Relator, as trustee, "does not offend traditional notions of fair play and substantial justice"; (18) that the burden on Relator, as trustee, "is not unreasonable"; (19) that the State of Texas "has a significant interest in adjudicating the dispute"; and (20) that Real Party in Interest's interest "in obtaining convenient and effective relief is served by this forum."

no such right to an interlocutory appeal.").[2]  Accordingly, if the trial court clearly abused its discretion by denying the special appearance, Relator may be entitled to mandamus relief if she has no adequate remedy by appeal.  *See J.W.L.*, 291 S.W.3d at 83.  Because we conclude that the trial court clearly abused its discretion and that Relator lacks an adequate appellate remedy under this case's facts and circumstances, we grant the requested relief.

## II. Discussion

In a single issue, Relator complains that the trial court erred by overruling her special appearance because she is not a Texas resident and because Real Party in Interest Sandra Lea Ramsey (RPI) failed to allege facts or offer any evidence that Relator has minimum contacts with Texas sufficient to hale her into court in her trustee capacity.

## A. Applicable law

Our supreme court has recently recited some of the rules applicable to special appearances, stating,

> Texas courts may exercise personal jurisdiction over a nonresident defendant when (1) our long-arm statute authorizes it and (2) doing so comports with federal and state constitutional due process guarantees. *Old Republic Nat'l Title Ins. Co. v. Bell*, 549 S.W.3d 550, 558 (Tex. 2018). But because Texas's long-arm statute extends personal jurisdiction as far

---

[2]Although Real Party in Interest contends that Relator has failed to present a valid basis for the court to deviate from the general rule that mandamus relief is not available to challenge a special appearance's denial, she also acknowledges that this original proceeding arises from a divorce case.

as the federal constitutional requirements allow, the "federal due process requirements shape the contours of Texas courts' jurisdictional reach." *Searcy v. Parex Res., Inc.*, 496 S.W.3d 58, 66 (Tex. 2016).

> The assertion of personal jurisdiction over a nonresident defendant is constitutional when two criteria are met: (1) the defendant has established "minimum contacts" with the forum state; and (2) the exercise of jurisdiction does not offend "traditional notions of fair play and substantial justice." *TV Azteca [v. Ruiz*, 490 S.W.3d [29,] 36 [(Tex. 2016)] (quoting *Int'l Shoe [Co. v. Washington]*, 326 U.S. [310,] 316, 66 S. Ct. 154 [(1945)]). To establish minimum contacts, the defendant must have "purposefully [availed] itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 414 S.W.3d 142, 150 (Tex. 2013).

> The purposeful-availment analysis is guided by three main principles, which bear repeating. *See Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 785 (Tex. 2005). First, only the defendant's contacts with the forum are relevant; the unilateral activity of a third party is not. *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 575 (Tex. 2007). Second, the defendant's contacts must be "purposeful" as opposed to "random, fortuitous, or attenuated." *Id.* And third, the defendant must seek some benefit, advantage, or profit by availing itself of the jurisdiction. *Michiana*, 168 S.W.3d at 785.

*Goldstein v. Sabatino*, 690 S.W.3d 287, 294 (Tex. 2024).

A defendant establishes "minimum contacts" with a state when it purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws. *Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 338 (Tex. 2009) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S. Ct. 1228, 1240 (1958)). The "minimum contacts" inquiry examines the nature and extent of the defendant's relationship to the forum to determine whether the defendant is amendable to general or specific jurisdiction. *State v. Volkswagen*

4

*Aktiengesellschaft*, 669 S.W.3d 399, 412 (Tex. 2023). General jurisdiction—which is not alleged here—arises when a defendant's contacts with the forum state are so continuous and systematic that the defendant is essentially at home there. *Id.* Specific jurisdiction covers defendants less intimately connected with the forum state, but only as to a narrower class of claims, and it requires a claim-by-claim analysis that focuses on the relationship between the defendant, the forum state, and the litigation's operative facts. *Id.* at 412–13. A specific jurisdiction analysis assesses the quality and nature of the contacts, not the quantity, and those contacts must be purposeful and not random, fortuitous, or attenuated. *Id.* at 413–14.

Whether a trial court has personal jurisdiction over a nonresident defendant is a question of law that we review de novo. *Id.* at 413. In a challenge to personal jurisdiction, the plaintiff and the defendant bear shifting burdens of proof. *Old Republic Nat'l Title Ins. Co*, 549 S.W.3d at 559. The plaintiff bears the initial burden to plead sufficient allegations to bring the nonresident defendant within the reach of Texas's long-arm statute. *Id.* Once the plaintiff has done so, the burden shifts to the defendant to negate all bases of personal jurisdiction alleged by the plaintiff. *Id.* One way the defendant can meet this burden to negate jurisdiction is by showing that even if the plaintiff's alleged facts are true, the evidence is legally insufficient to establish jurisdiction or that the defendant's contacts with Texas fall short of purposeful availment. *Id.* If the parties present conflicting evidence that raises a fact issue, we will resolve the dispute by upholding the trial court's determination. *Volkswagen*, 669

S.W.3d at 413. If the trial court makes fact findings, we review those for legal and factual sufficiency and review the trial court's legal conclusions de novo. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002).

Rule of Civil Procedure 120a, which governs the special appearance procedure, requires the movant to file a sworn motion and requires the trial court to determine the special appearance "on the basis of the pleadings,[3] any stipulations made by and

[3]Although RPI asserts that she is entitled to amend her pleadings to include additional facts, the time for her to have done so was *after* Relator filed her amended special appearance on February 5, 2024, and *before* the March 25, 2024 hearing. *See* Tex. R. Civ. P. 120a(3); *Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 659 (Tex. 2010) ("When the pleading is wholly devoid of jurisdictional facts, the plaintiff should amend the pleading to include the necessary factual allegations, *see* Tex. R. Civ. P. 63, thereby allowing jurisdiction to be decided based on evidence rather than allegations, as it should be."); *see also* Tex. R. Civ. P. 63 (stating that parties may amend their pleadings by filing them with the clerk "at such time as not to operate as a surprise to the opposite party; provided, that any pleadings . . . offered for filing within seven days of the date of trial or thereafter, . . . shall be filed only after leave of the judge is obtained, which leave shall be granted by the judge unless there is a showing that such filing will operate as a surprise to the opposite party"); *Rose Trading, LLC v. Wei*, No. 05-21-00232-CV, 2021 WL 5754810, at *2 (Tex. App.—Dallas Dec. 3, 2021, pet. denied) (mem. op.) ("An amended petition filed without leave after a special appearance hearing is untimely, and it may not be considered when ruling on the special appearance."); *Lombardo v. Bhattacharyya*, 437 S.W.3d 658, 665 (Tex. App.—Dallas 2014, pet. denied) (stating that appellate courts have either assumed without deciding that Rule 63 applies—or have applied it directly—to special appearance hearings; counting cases). *Cf. Patel v. Pate*, No. 02-16-00313-CV, 2017 WL 2871684, at *4 (Tex. App.—Fort Worth July 6, 2017, no pet.) (mem. op.) (upholding denial of special appearance when plaintiffs amended their pleadings between the second and third evidentiary special appearance hearings and defendants not only failed to object to the trial court's consideration of the amended petition but also asked the trial court to take judicial notice of it at the third evidentiary hearing).

The trial court acknowledged that RPI had not filed a third amended petition before the special appearance hearing, stating, "This is a 14, 15-month old pleading

6

between the parties, such affidavits and attachments as may be filed by the parties, the results of discovery processes, and any oral testimony." Tex. R. Civ. P. 120a(1), (3). The affidavits, if any, "shall be served at least seven days before the hearing, shall be made on personal knowledge, shall set forth specific facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify." Tex. R. Civ. P. 120a(3).

## B. Pleadings

In her second amended petition for divorce, filed December 30, 2022, RPI added Relator as trustee and alleged:

> ### Long-Arm Jurisdiction
> The Court has jurisdiction over [Relator as trustee], a non-resident, because she has purposely availed herself in her capacity as trustee of the privileges and benefits in Texas. [Relator as trustee] subjects herself to this Court's personal jurisdiction in accordance with the following: (1) [Relator as trustee] has purposely consummated acts and transactions in the State of Texas; (2) [RPI's] . . . causes of action arise out of or relate to those same acts and transactions; and (3) the assumption of jurisdiction by the State of Texas does not offend traditional notions of fair play and substantial justice.

*See* Tex. Civ. Prac. & Rem. Code Ann. § 17.042(2) (stating that a nonresident does business in Texas if she "commits a tort in whole or in part in this state").

---

and . . . you're kind of stuck with what you've got here." When RPI's counsel asked to reschedule the hearing to amend the petition, Relator's counsel objected and asserted that Relator would suffer irreparable harm and prejudice if the trial court allowed RPI to amend. The trial court ruled, "[Y]ou're stuck with your pleadings."

RPI brought claims for fraudulent transfer and civil conspiracy (a derivative tort) against Relator as trustee, but she did not include any specific factual allegations of Relator's contacts with Texas:

> ### Relief from Third-Party for Fraudulent Transfer
> [Relator], Trustee, is the record title holder and/or registered owner of certain property that was fraudulently transferred by [Larry, Relator's father and RPI's husband] to [Relator], Trustee, without consideration and/or for less than reasonably equivalent value. The purpose of the transfer was to defraud [RPI] . . . of community property rights in that property and/or [RPI's] . . . separate property rights in that property, and [relator], Trustee had notice of Larry['s] intent to injure [RPI's] rights. Larry . . . transferred to [Relator], Trustee, real property, cash, and other community assets.[4]
>
> This action proximately resulted in damages to [RPI] . . . for which [RPI] . . . now seeks relief.
>
> [Relator], Trustee, acted with malice in engaging in such conduct, thus entitling [RPI] to exemplary damages within the jurisdictional limits of this Court.
>
> [RPI] requests that the Court find that the items transferred to [Relator], Trustee, were in fraud of her right in those assets and that, after notice and hearing, the Court enter an order setting aside the transfer and/or transfers as a fraud on the community and declaring the assets to be the community assets of [RPI] and Larry . . . . If the Court deems it appropriate, [RPI] requests that the Court award [RPI] a money judgment against [Relator], Trustee.

---

[4]Although RPI contends that her pleadings were sufficient to put Relator on notice that Relator's "activities in Texas involving fraudulent transfers formed the basis of [RPI's] assertion that Texas could exercise specific jurisdiction over [Relator]," nothing in RPI's amended petition states that the transferred real property, cash, and other assets were located in Texas.

*Relief from Third-Party for Civil Conspiracy*

. . . [Relator], Trustee, in combination with Larry . . . agreed to accomplish an unlawful purpose and/or to accomplish a lawful purpose by unlawful means. Specifically, Larry . . . and [Relator], Trustee, entered into a conspiracy to accomplish an unlawful purpose and/or to accomplish a lawful purpose by unlawful means, by transferring real property, cash, and other community assets without consideration and/or for less than reasonably equivalent value. There was a meeting of the minds of Larry . . . and [Relator], Trustee. [Relator], Trustee and Larry . . . acted with intent to harm [RPI] . . . .

This action proximately resulted in damages to [RPI] . . . for which [RPI] . . . now seeks relief.

[Relator], Trustee, acted with malice in engaging in such conduct, thus entitling [RPI] to exemplary damages within the jurisdictional limits of this Court.

## C. Special appearance

In her verified amended special appearance, which she filed on February 5, 2024, Relator averred that she was a non-resident of Texas; that she was a Florida resident and had not resided in Texas since 2018 and since becoming trustee on June 22, 2018, except for when Larry had a serious medical condition in 2018, when she went to Texas in her capacity as Larry's daughter "and/or power of attorney and healthcare surrogate"; and that she had no contacts with Texas in her trustee capacity. Relator further averred that the irrevocable trust is administered in Florida and that its accounts and financial institutions are in Florida.

In her amended special appearance, Relator pointed out that even if RPI's allegations were taken as true, RPI had alleged that *Larry* had transferred property to *Relator*—a unilateral activity—and that RPI had failed to allege any tortious act or

9

omission by Relator as trustee that occurred in Texas or any other connection to Texas that would support RPI's allegation that Relator as trustee had "purposely consummated acts and transactions" in the state or to otherwise meet her burden to establish general or specific personal jurisdiction over Relator as trustee. *See Volkswagen*, 669 S.W.3d at 413 (requiring the court to consider only the defendant's contacts with the forum and not the unilateral activity of another party or a third person).

Relator also asserted that Texas's interest in adjudicating the parties' dispute was minimal while Florida's interest was substantial because the trust properties were either located in Florida or were acquired by Larry while he lived in Florida before he transferred the property into the Trust; the Trust was formed under Florida law, which governed the Trust; and Florida was "where most fact witnesses reside[,] where the other evidence related to the Trust and [RPI's] claims is located[,] and where [Relator as trustee] operates the business of the Trust." *See Dugas Ltd. P'ship v. Dugas*, 341 S.W.3d 504, 518–19 (Tex. App.—Fort Worth 2011) (pet. granted, judgm't vacated by agr.) (holding trial court erred by denying trust's special appearance when distributions were made to beneficiary in Texas only as a result of beneficiary's unilateral act of moving to Texas several years after the trust was created; the trust was not created for the benefit of a Texas resident; and its trustee did not voluntarily undertake continuing obligations for the benefit of a Texas resident).

To her amended special appearance, Relator attached her affidavit, along with documents supporting her Florida residence, which included her Florida driver's license, her Florida voter registration, her vehicle's Florida certificate of title, and her notice of ad valorem taxes assessed by Florida's Indian River County Tax Collector. She also attached the affidavit of Larry[5] and the affidavits of Brandon Ketron (attorney on Florida trust and marital property law),[6] Edmon J. Martin (forensic accountant and investigator),[7] Claudia King,[8] and Jay Chapman.[9] Relator also attached the certification of trust made on February 5, 2024, showing that the trust was created on June 22, 2018, under Florida law. *Cf. Twyman v. Twyman*, No. 01-08-00888-CV, 2009 WL 1331341, at *6–7 (Tex. App.—Houston [1st Dist.] May 14, 2009,

---

[5]Larry stated that he and RPI married in February 2000 and that he had retired before he married her. He had not earned income from employment during their marriage. They lived in Florida from February 2000 to 2002, when they moved to Texas; they moved back to Florida in 2010. They both lived in Florida until RPI moved back to Texas in 2022.

[6]Ketron was retained by Relator to opine on Florida trust and marital property law. Ketron's affidavit sponsored the certificate of trust of Larry's irrevocable trust and various properties.

[7]Martin was retained by Relator to perform a reconstruction of Larry's assets prior to his February 9, 2000 marriage to RPI and a tracing of the assets bought and sold after the marriage and transferred into the trusts.

[8]King was a certified financial planner who began working with Larry in 2008 to help him keep his assets separate from RPI's in the event of his death or divorce.

[9]Chapman was a Florida certified financial planner who worked with Larry from 2014 to 2016.

no pet.) (mem. op.) (upholding denial of special appearance based on minimum contacts when plaintiff—among other things—showed, without contradiction, that trust had choice-of-law provision requiring Texas law, that defendant trustee came to Texas to set up the trust and to take the settlor to a Texas attorney to sign the trust, that the defendant trustee managed the Texas trust, that the trust's primary assets were held by a company doing business in Texas, that the defendant trustee signed a promissory note, payable to a co-trustee, that allegedly affected the settlor's trust assets located in Texas, and that the defendant trustee received extensive trust funds from the trust, the receipt of which could be a breach of her fiduciary duty).

**D. Response and hearing**

RPI's response to Relator's amended special appearance was filed at 8:47 a.m. on March 25, 2024—the date of the special appearance hearing. It was not verified, and RPI did not attach any affidavits, although she did attach a variety of documents, in addition to the transcript from Relator's January 9, 2024 deposition. *Cf.* Tex. R. Civ. P. 120a(3) (stating, in pertinent part, that "[t]he affidavits, if any, shall be served at least seven days before the hearing, shall be made on personal knowledge, shall set forth specific facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify").

12

The trial court sustained Relator's objections to its consideration of RPI's response[10] and took the special appearance under advisement, stating, "About once every four or five years, we get a special appearance. I don't pretend to stay on top of what the current case law is on that. Okay. So I'm not going to give you a ruling on that today."

RPI filed a supplemental response 16 days after the hearing. To the supplemental response, RPI attached her unsworn declaration to sponsor the 14 exhibits that she had attached to the supplemental response and to support her assertions that Relator as trustee had sufficient contacts with Texas to anticipate being sued there.

Six days after RPI filed her supplemental response, the trial court entered an order stating that it considered "the pleadings, the affidavits and attachments *filed by the parties prior to the March 25, 2024 special appearance hearing*, and argument of counsel." [Emphasis added.] Accordingly, the record reflects that the trial court did not consider RPI's supplemental response and attachments.[11]

---

[10]The trial court noted during the hearing, "I don't think I can consider your response. It's not verified. There really aren't affidavits attached to it. . . . I don't see anything that authenticates most of this."

[11]In her response to Relator's mandamus petition, RPI refers us to the documents that she had attached to her late-filed response, but the trial court correctly sustained Relator's objections to those documents at the hearing. To the extent the trial court considered the documents filed only hours before the special appearance hearing after having sustained Relator's objections during the hearing, this was an abuse of discretion. *See* Tex. R. Civ. P. 120a(3).

**E. Abuse-of-Discretion Analysis**

We need not decide whether RPI's second amended petition satisfied her burden to allege facts sufficient to bring Relator within Texas's long-arm statute because, even if it did,[12] Relator's amended special appearance and evidence negated the bases of personal jurisdiction RPI had alleged. As Relator points out in her mandamus petition:

> [RPI] only asserts that [Relator], as Trustee, committed acts amounting to fraudulent transfer and civil conspiracy, without specifying: (1) what those acts were; (2) where the alleged (and unspecified) acts occurred; (3) how and/or why the alleged (and unspecified) fraudulent transfer "was without consideration and/or for less than reasonably equivalent value"; (4) how the aforementioned, unspecified fraudulent transfer/act(s) of fraudulent transfer was for the "purpose" of defrauding [RPI's] alleged rights in the unspecified property; (5) how [Relator, as] Trustee allegedly "had notice of Larry['s] . . . intent to injure" [RPI's] alleged rights; (6) how [Relator, as] Trustee acted with malice as alleged; (7) *where and how* the alleged fraudulent act(s) occurred; and (8) what [Relator, as] Trustee did in furtherance of any purported fraudulent act(s).

When RPI failed to timely respond to the amended special appearance and failed to support her response with affidavits filed "at least seven days before the hearing," *see* Tex. R. Civ. P. 120a(3), there was nothing to contradict Relator's evidence and, accordingly, no evidence to support the trial court's contrary personal-jurisdiction findings. *See Old Republic Nat'l Title Ins. Co.*, 549 S.W.3d at 559.

---

[12]The mere allegation that a nonresident directed a tort from outside the forum against a resident is insufficient to establish personal jurisdiction. *Old Republic Nat'l Title Ins. Co.*, 549 S.W.3d at 562.

We note that RPI could have requested a continuance before the hearing, either to amend her petition or to correct her special appearance response. *See* Tex. R. Civ. P. 120a(3) (stating, in pertinent part, "[s]hould it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just"). But RPI did not request a continuance before the hearing began and did not request permission to amend her pleadings until after the hearing had already begun.

Accordingly, based on the record before us, the trial court erred by denying Relator's amended special appearance.

## F. Appellate Remedy

An appellate remedy's adequacy has no specific definition; "the term is a 'proxy for the careful balance of jurisprudential considerations' [that implicate both public and private interests,] and its meaning 'depends heavily on the circumstances presented.'" *In re Allstate Indem. Co.*, 622 S.W.3d 870, 883 (Tex. 2021) (orig. proceeding) (quoting *In re Prudential Ins. of Am.*, 148 S.W.3d 124, 136–37 (Tex. 2004) (orig. proceeding)); *In re Ford Motor Co.*, 165 S.W.3d 315, 317 (Tex. 2005) (orig. proceeding) (quoting *Prudential*, 148 S.W.3d at 136); *see also In re McAllen Med. Ctr., Inc.*, 275 S.W.3d 458, 464 (Tex. 2008) (orig. proceeding) ("Whether a clear abuse of

discretion can be adequately remedied by appeal depends on a careful analysis of costs and benefits of interlocutory review.").

An appellate remedy is adequate when any benefits to mandamus review are outweighed by the detriments. *Prudential*, 148 S.W.3d at 136. But even when the benefits of mandamus review outweigh the detriments, we must consider whether the appellate remedy is nonetheless adequate. *Id.* In evaluating the benefits and detriments, we consider whether mandamus will preserve important substantive and procedural rights from impairment or loss. *In re Team Rocket, L.P.*, 256 S.W.3d 257, 262 (Tex. 2008) (orig. proceeding). The danger of permanently losing substantial rights occurs when the appellate court would not be able to cure the error, when the party's ability to present a viable claim or defense is vitiated, or when the error cannot be made a part of the appellate record. *ERCOT, Inc. v. Panda Power Generation Infrastructure Fund, LLC*, 619 S.W.3d 628, 641 (Tex. 2021) (orig. proceeding) (citing *In re Van Waters & Rogers, Inc.*, 145 S.W.3d 203, 211 (Tex. 2004) (orig. proceeding)).

We should also consider whether mandamus will allow us "to give needed and helpful direction to the law that would otherwise prove elusive in appeals from final judgments" and "whether mandamus will spare litigants and the public 'the time and money utterly wasted enduring eventual reversal of improperly conducted proceedings,'" *Team Rocket*, 256 S.W.3d at 262 (quoting *Prudential*, 148 S.W.3d at 136), including whether the challenged order radically skews the case's procedural

16

dynamics, *In re Kappmeyer*, 668 S.W.3d 651, 659 (Tex. 2023) (orig. proceeding) (quoting *Prudential*, 148 S.W.3d at 136).

As set out above, the trial court abused its discretion by denying Relator's special appearance. Because the special appearance arose in a family law case, interlocutory appellate review of the trial court's erroneous decision is unavailable. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(7). Without mandamus relief, Relator, a Florida resident, in her capacity as an out-of-state trustee, will be required to participate as a party in her father's and step-mother's contentious divorce proceedings in Texas—in a case that has been going on since before December 2022, when RPI filed her second amended petition—until a final judgment is rendered. That is, "[a]bsent mandamus review, jurisdictional and other like issues, including a party's claimed due process right to avoid the obligation of answering or appearing at trial, would be rendered effectively meaningless." *In re Swart*, 581 S.W.3d 844, 847–48 (Tex. App.—Dallas 2019, orig. proceeding); *see In re AIU Ins. Co.*, 148 S.W.3d 109, 119 (Tex. 2004) (orig. proceeding) (explaining that in Section 51.014(a)(7), which became effective June 20, 1997, the Legislature rejected the supreme court's former view that a special appearance is not reviewable by mandamus unless the harm to the defendant exceeds mere increased cost and delay); *CSR Ltd. v. Link*, 925 S.W.2d 591, 597 (Tex. 1996) (orig. proceeding) (stating, before Section 51.014(a)(7)'s implementation, that "[o]ur approach of permitting mandamus relief from the denial of a special appearance only when personal jurisdiction is clearly and completely lacking and when

17

there are exceptional circumstances is in accord with the approach of other jurisdictions"); *Nat'l Indus. Sand Ass'n v. Gibson*, 897 S.W.2d 769, 776 (Tex. 1995) (orig. proceeding) (granting mandamus relief from denial of special appearance under pre-Section 51.014(a)(7) law when the plaintiffs made only bare allegations of conspiracy lacking any evidence of conspiratorial acts in or directed to Texas and thereby presented no basis on which to assert specific jurisdiction, and stating that, "[i]n this case, the 'total and inarguable absence of jurisdiction' justifies extraordinary relief").

Because this portion of the trial court's final judgment at some point in the future will be reversible on appeal, and because, on this record, there is a total and inarguable absence of personal jurisdiction over Relator in her capacity as trustee, we conclude that mandamus relief is appropriate, *see Team Rocket*, 256 S.W.3d at 262, and we sustain Relator's sole issue.

## III.  Conclusion

Having sustained Relator's sole issue, we vacate the order denying her amended special appearance and order the trial court to sign the appropriate order.  *See* Tex. R. Civ. P. 120a(4) (stating that if the court sustains the special appearance, "an appropriate order shall be entered").

/s/ Bonnie Sudderth

Bonnie Sudderth
Chief Justice

Delivered:  September 26, 2024